UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAFAEL C. PADILLA,<br><br>        Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>**Commissioner of the Social**<br>**Security Administration,**<br><br>        Defendant. | Case No. CV 05-08734 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. Following an administrative hearing, plaintiff's applications for benefits were denied in written decision dated July 28, 2005 by Administrative Law Judge Mary L. Everstine (the "ALJ"). [JS 2; AR 19-25]. The ALJ found that plaintiff had severe multi-level mild disc protrusions of the lumbar spine, multi-level mild-to-moderate stenosis of the cervical spine, and a hernia, but that he retained the residual functional capacity ("RFC") for medium work. The ALJ determined that plaintiff's RFC did not preclude

him from performing his medium past relevant work as a hand-packager, and therefore she found plaintiff not disabled at any time through the date of her decision. [AR 24-25]. The Appeals Council denied plaintiff's request for review. [AR 4-6].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Medical opinion evidence**

Plaintiff contends that the ALJ improperly rejected uncontroverted treating and examining source opinions indicating that plaintiff could perform light work or less. [JS 4-12].

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ rejected the opinions of the Commissioner's consultative internist, Dr. Monica Schwarcz [AR 82-87], and plaintiff's treating orthopedic surgeons Dr. Munir Uwaydah and Dr. Jalil Rashti. [See AR 92-115, 116-124]. Dr. Schwarcz examined plaintiff in February 2004 and opined that plaintiff was limited to light work due to a left indirect inguinal hernia.[1] She noted that the hernia is "partially reducible," with "no evidence of incarceration," but given the hernia's size, she recommended surgical evaluation. [AR 85-86].

Dr. Uwaydah treated plaintiff from September 2004 through February 2005 in connection with plaintiff's workers' compensation case. Dr. Uwaydah diagnosed cervical and lumbar spine disc herniations with radiculopathy and a left inguinal hernia. [AR 92-115]. Dr. Uwaydah opined that plaintiff was temporarily totally disabled during that entire period.[2] [AR 95-114]. In a medical source statement dated February 9, 2005, Dr Uwaydah opined that plaintiff could perform what amounts to less than sedentary work. [AR 92-94, 115].

Dr. Rashti evaluated plaintiff initially on April 13, 2005. He diagnosed cervical and lumbar spine discogenic disease, left inguinal hernia, and left medial epicondylitis. [AR 122]. Although there are no subsequent treatment reports from Dr. Rashti, he recommended that plaintiff be seen by a hernia specialist

---

[1] According to information available on the website of the United States National Library of Medicine and the National Institutes of health, an hernia occurs when part of an organ, usually the intestines, protrudes through a weak point or tear in the abdominal wall. An inguinal hernia, more common in men than in women, appears as a bulge in the groin or scrotum. A hernia is sometimes associated with heavy lifting but may have no obvious cause. Symptoms include groin pain or groin discomfort aggravated by bending or lifting and a tender lump in the groin or scrotum. Inguinal hernias can restrict blood supply to the bowel herniated through the defect, creating a medical emergency. Almost all hernias require surgery to reposition the herniated portion of the intestine and secure the weakened muscles in the abdomen or groin area. See http://www.nlm.nih.gov/medlineplus/ency/imagepages/17075.htm (last visited February 13, 2006).

[2] The term "temporarily totally disabled" is a California workers' compensation term of art meaning that an individual is "totally incapacitated" and "unable to earn any income during the period when he is recovering from the effects of the injury." Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir. 1996) (internal quotation marks and citations omitted); see also Cal. Labor Code § 4653; W. M. Lyles Co. v. Workmen's Compensation Appeals Board, 3 Cal.App.3d 132, 136 (1969) (stating that a period of temporary total disability "is that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention*"* )(emphasis added) (citation omitted).

1 for a consultation, and he prescribed physical therapy, medication (including epidural injections for pain),
2 and chiropractic treatment.[3] He opined that plaintiff was temporarily totally disabled. [AR 123].

3       The ALJ gave little weight to the opinions of Drs. Schwarcz, Uwaydah, and Rashti because "they
4 are not consistent with the medical record as a whole," including the "objective laboratory reports and x-
5 rays," and because none of them recommended surgery for plaintiff's cervical and lumbar disc disease. The
6 ALJ faulted those doctors for "appear[ing] to have accepted the claimant's subjective complaints" and for
7 appearing to have become "advocates" for plaintiff. [AR 22]. The ALJ concluded that plaintiff's subjective
8 reports to Dr. Gordon, an emergency room examining physician, were more credible than his statements
9 to "doctors that he knew were evaluating him in the context of seeking disability payments." [AR 22].[4]

10       The ALJ's reasons for rejecting the opinions of Drs. Schwarcz, Uwaydah, and Rashti are not
11 supported by substantial evidence in the record. To begin with, her reliance on plaintiff's statements to Dr.
12 Gordon is misplaced. Dr. Gordon examined plaintiff when he was brought to California Hospital Medical
13 Center by ambulance for complaints of acute abdominal pain in June 2004. [AR 138-141]. Plaintiff
14 ultimately was discharged in stable condition with diagnoses of acute renal failure, dysentery with
15 dehydration, metabolic imbalance, a history of hypertension, and polycythemia. [AR 136]. Dr. Gordon noted
16 that plaintiff exhibited "scrotal swelling he has had for about 3 years, left side more than right [sic] no pain,
17 it does not cause him any problems." [AR 138]. The ALJ concluded that this statement in Dr. Gordon's
18 report outweighed all of plaintiff's other statements about pain and limitations from his inguinal hernia, and
19 that it undermined the validity of the opinions of Drs. Schwarcz, Uwaydah, and Rashti. [See AR 22].

---

[3] During the hearing, plaintiff testified that Dr. Uwaybah and Dr. Rashti both recommended physical therapy, injections for his neck and lower back, and surgery for his hernia, but that the workers' compensation carrier had not authorized injections or surgery. Dr. Uwaybah prescribed medications for pain and inflammation, including Soma, Ultram, and Voltaren, and Dr. Rashti advised plaintiff to continue taking those medications. [AR 98-99, 103, 117, 123].

[4] In marked contrast to the treating and examining physicians, the non-examining state disability services physician opined that plaintiff's impairments were not projected to be severe for the requisite continuous 12-month period. [See AR 21, 89]. The ALJ did not rely on that opinion, however, to discredit the opinions of the treating and examining physicians, nor could she permissibly have done so. See Tonapetyan, 242 F.3d at 1148 (stating that the contrary opinion of a non-examining physician does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion and may constitute substantial evidence only when consistent with other independent evidence in the record).

4

Dr. Gordon, however, never assessed plaintiff's functional capacity as a result of his combined impairments. Nor did he offer any opinion about plaintiff's ability to work. The three examining and treating doctors who did so—Schwarcz, Uwaydah, and Rashti—uniformly concluded that plaintiff's cervical and lumbar spine disease and inguinal hernia limited him to less than medium work. Two of those three doctors, both treating physicians and orthopedic surgeons, opined that plaintiff's orthopedic impairments and inguinal hernia were temporarily totally disabling. Dr. Schwarcz opined that plaintiff could perform no more than light work. She was not a workers' compensation examining physician (as the ALJ incorrectly stated in her decision [AR 21]), but rather a consultative physician hired by the Commissioner. Dr. Schwarcz certainly had no motive to "advocate" on behalf of plaintiff, and the fact that plaintiff saw Dr. Uwaydah and Dr. Rashti in conjunction with a workers' compensation claim, without more, does not provide a legitimate basis for discrediting their opinions. See Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998)("[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.").

Furthermore, neither Dr. Schwarcz nor the treating physicians uncritically accepted plaintiff's subjective complaints, and they did not base their diagnoses solely on plaintiff's subjective symptoms, as the ALJ seems to suggest. Dr. Schwarcz based her opinion on plaintiff's history, subjective symptoms, and on her examination findings, while treating orthopedists Dr. Uwaydah and Dr. Rashti relied on those factors as well as on plaintiff's cervical and lumbar spine MRI results. Dr. Rashti also had the benefit of reviewing plaintiff's medical records. In other words, Drs. Schwarcz, Uwaydah, and Rashti all relied on clinical and objective findings, along with plaintiff's subjective symptoms, to conclude that plaintiff's inguinal hernia and cervical and lumbar spine conditions, in combination, were temporarily totally disabling or limited him to light work. No treating or examining physician opined that plaintiff could perform medium work, as the ALJ found. The ALJ is not a medical expert, and she was not entitled to substitute her judgment about the significance of the medical evidence for the judgments of the examining and treating physicians who factored that evidence into their opinions. See Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (holding that it was error for the ALJ "to substitute his own medical judgment" for that of a physician in diagnosing the claimant's condition). For these reasons, the ALJ committed legal error in rejecting the opinions of the treating and examining physicians that plaintiff can perform light work or less.

In the circumstances of this case, that error requires reversal and the payment of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(discussing and applying the standard for determining whether a remand for further proceedings or for the payment of benefits is warranted). The improperly rejected treating and examining source opinions establish that plaintiff is limited to light work or less, and therefore he cannot perform his past relevant work, which the ALJ classified as unskilled and medium or heavy. [See AR 24, 184]. Therefore, the burden falls on the Commissioner to demonstrate that plaintiff can perform alternative work. The Medical-Vocational Guidelines or "grids" direct a finding of disability for a person "closely approaching advanced age"[5] who is limited to light work, has a "limited or less" education,[6] and is unable to communicate in English.[7] See 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 202.09. As the ALJ acknowledged during the hearing, the grids would direct a finding of disability if plaintiff were limited to light work because he meets the other criteria. [See AR 184-185]. If plaintiff is limited to sedentary work, the grids direct a finding of disability regardless of his literacy or ability to communicate in English. See 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 201.09.

---

[5] A person "closely approaching advanced age" is aged 50-54. 20 C.F.R. §§ 404.1563(d), 416.963(d). Plaintiff was born on November 17, 1952 and was 52 years old when the ALJ issued her decision on July 28, 2005. He turned 50 on November 17, 2002, and therefore he was "closely approaching advanced age" on and after his alleged onset date on November 1, 2003. [See AR 20, 175].

[6] Plaintiff had a sixth-grade education in Mexico. [AR 20, 176, 180]. A "limited" education generally corresponds to 7th grade through 11th grade formal education. 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3).

[7] A claimant is "illiterate or unable to communicate in English" for purposes of applying the grid rules if the claimant is illiterate in English, unable to communicate in English, or both. The Commissioner bears the burden of establishing the claimant's literacy or ability to communicate in English. Silveira v. Apfel, 204 F.3d 1257, 1261-1262 (9th Cir. 2000).With the assistance of a Spanish-language interpreter, plaintiff testified that he can read and write "a little" English, that he can speak and understand some English, and that he took the United States citizenship test but did not pass it because "I did not know English." [AR 180-181]. The ALJ did not make a formal finding with respect to plaintiff's literacy because it was unnecessary at step four. However, her only hypothetical question asked the vocational expert to assume the existence of a person who is closely approaching advanced age, unable to communicate in English "except for very basic exchanges," and can perform medium work. [AR184]. When plaintiff's counsel proposed to ask the vocational expert a hypothetical person involving a person who is limited to light work but otherwise is identical to the hypothetical person described by the ALJ, the ALJ interjected that the hypothetical question would result in a "directed disability" under the grids. [AR 185].

The record is adequately developed, and it is clear that if the improperly rejected medical opinions are credited, the grids apply and dictate a finding of disability. See Lounsburry v. Barnhart, 468 F.3d 1111, 1117 (9th Cir. 2006) (explaining that at step five, the ALJ "may not look to other evidence" to rebut or override the grids where the grids direct a finding of disability on the basis of exertional limitations alone). Accordingly, plaintiff is entitled to the payment of benefits for a period of disability beginning on his alleged onset date, November 1, 2003.[8]

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect the application of the proper legal standards. Accordingly, defendant's decision is **reversed, and the matter is remanded for an award of benefits consistent with this memorandum of decision.**

**IT IS SO ORDERED.**

DATED: February 14, 2007

/ s /
_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[8] This disposition makes it unnecessary to consider plaintiff's remaining contentions.